Argued and submitted March 1, affirmed May 22, reconsideration denied July 12, petition for review allowed July 30, 1985 (299 Or 583)
See 300 Or 278 (1985)

In the Matter of the Compensation of
Betty L. Williams, Claimant.

WILLIAMS,
*Petitioner,*

*v.*

GATES, McDONALD & COMPANY,
*Respondent.*

(80-10620; CA A32940)

700 P2d 270

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief was Malagon & Associates, Eugene.

Cynthia S. C. Shanahan, Portland, argued the cause for respondent. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant seeks judicial review of a Workers' Compensation Board order that found that her memory loss and mild dementia are not causally related to her compensable upper back injury. We affirm.

Claimant was injured in March, 1978, while working for Owens Illinois Corporation in a job which required repetitive lifting. She saw a series of physicians after the injury. They prescribed conservative treatment, but she continued to have severe pain in her right shoulder and arm. She was ultimately referred to Dr. Misko, a neurosurgeon, who recommended a discectomy and spinal fusion at the C5-6 level. In his preoperative examination he noticed a bruit[1] in her right carotid artery. He also learned that she had had an incident of amaurosis, or temporary blindness, in her right eye. He attributed that incident to the carotid artery defect. It would be necessary to retract, or move, the right carotid artery in the course of the spinal fusion surgery. The condition which Misko found indicated that there might be unreasonable dangers in doing so with the artery in its current condition. Misko therefore first performed a right carotid endarterectomy, removing the plaque buildup from inside the artery, in September, 1979. He then performed the discectomy and fusion in October, 1979.

■     Soon after the endarterectomy, claimant began noticing a loss in her short-term memory; she also experienced other symptoms, which were ultimately diagnosed as mild dementia.[2] The medical evidence on the cause of claimant's mental problems is not wholly satisfactory. We conclude, however, on the basis of our review of the evidence, that the most probable explanation is that claimant suffered either a mild stroke or a temporary loss of oxygen to her brain in the course of or as a result of the endarterectomy. We therefore find that claimant's memory loss and dementia were caused by that operation.

---

[1] A bruit is an unusual sound caused by the turbulent flow of blood through the artery at a point where it is constricted.

[2] These problems do not clearly appear in claimant's medical and psychological records until about two years after the operation. However, she and her family testified at the hearing that she first exhibited the symptoms soon after the endarterectomy. The referee accepted that testimony as credible; the Board did not reverse those findings. We have no basis for disagreeing with the referee on this point.

■   Our finding on the cause of claimant's symptoms requires us to determine whether the endarterectomy is the result of claimant's compensable injury. As a matter of chronology, she had the operation when she did because it was a necessary prelude to the discectomy and fusion; the latter operation was clearly related to her injury. However, the chronology does not end the inquiry. Misko, in a letter of June 3, 1983, stated:

> "It is true that Betty Williams developed amaurosis and a right carotid bruit. It is also true that because of the necessity of retracting the carotid artery and because of the symptoms, we performed a right carotid endarterectomy prior to a cervical discectomy and interbody fusion for her industrial injury.

> "However, *it is also true that, independent of her industrial injury, this patient should have had a right carotid endarterectomy.* It was, in fact, her industrial injury which brought her to the attention of physicians who diagnosed her case of carotid stenosis resulting in amaurosis. It was necessary to perform this procedure prior to her cervical discectomy." (Emphasis supplied.)

We understand Misko's letter to state that claimant should have had the endarterectomy, whether or not she had the spinal surgery. The condition which required that operation was not one which claimant could have safely ignored if it had not been for the fusion; the amaurosis was a sign that she needed treatment. The problem with her carotid artery was not going to disappear. There is no causal connection between her compensable injury and the underlying carotid artery constriction, and there is no causal connection between her compensable injury and the surgery to repair that constriction. There is only a purely fortuitous chronological connection. That chronological connection is insufficient to make the aftereffects of the endarterectomy compensable.

■■   The endarterectomy itself is compensable, of course, because it was a necessary prelude to the spinal surgery. However, the fact that a physician had to provide independently required treatment in order to treat the compensable injury does not by itself alone make the long-term consequences of the independently required treatment compensable.

Affirmed.