Argued and submitted January 17, reversed and remanded for reconsideration
July 3, 1996

In the Matter of the Compensation of
Glenn E. Whitlock, Claimant.

Glenn E. WHITLOCK,
*Petitioner,*

*v.*

KLAMATH COUNTY SCHOOL DISTRICT
and Samis,
*Respondents.*

(93-13776; CA A87326)

920 P2d 175

Sean Lyell argued the cause for petitioner. On the brief were Ralph E. Wiser III and Bennett & Hartman.

Elliott C. Cummins argued the cause for respondents. On the brief were George W. Goodman and Cummins, Goodman, Fish & Peterson, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Claimant petitions for review of an order of the Workers' Compensation Board that determined that his stress-related disorder was not compensable because it arose from "conditions generally inherent in every working situation." ORS 656.802(3)(b). We review for errors of law and for substantial evidence, ORS 183.482(7) and (8), and remand for reconsideration.

Claimant taught music to elementary school children in the Klamath County School District (District) from 1981 until 1993. At the end of the 1992-93 school year, in the wake of Ballot Measure 5,[1] the employer District eliminated all elementary school music positions. Consequently, claimant exercised his "bumping" rights under a collective bargaining agreement and secured a secondary school social studies teaching position. Although claimant had a secondary social studies certification, he had never actually taught that subject.

For the 1993-94 school year, the District assigned claimant either six or seven class periods a day, in four subject areas: 7th grade social studies, 10th grade global history, 12th grade economics, and 12th grade federal government. Claimant, like all teachers in the District, was allotted one 49-minute preparation period a day.

Claimant felt overwhelmed and stressed by his new duties. He worked 12 to 14 hours a day, including spending four to six hours a night preparing for the next day's classes. Nevertheless, he received "considerable" criticism from his students and some criticism from the school administration.[2] Claimant became very despondent and, at the urging of family and friends, sought treatment from his physician, who referred him for psychiatric treatment. The psychiatrist diagnosed "a single episode of nonpsychotic major depression due to stress at work."

---

[1] Ballot Measure 5 was adopted by the electorate in 1990 and incorporated into the Oregon Constitution at Article XI, section 11b-11f.

[2] The parties stipulated that claimant's interaction with school administrators "falls into the category of reasonable disciplinary, corrective, or job-performance activities," and are not the basis of his claim.

In October 1993, claimant filed a claim for workers' compensation. Employer denied coverage. The administrative law judge set aside employer's denial and awarded claimant attorney fees. The Board, with one dissenting member, reversed, concluding that claimant had failed to prove a compensable psychological claim under ORS 656.802, because "the stressors that claimant cites are all conditions which are generally inherent in every working situation." The Board based its decision on the following "conclusions of law:"

"The element in contention is whether stressors associated with claimant's social studies teaching job are conditions other than conditions generally inherent in every working situation. ORS 656.802(3)(b). The stressors include no training or experience in a job outside his area of expertise (music), and the number of different classes he had to teach coupled with overwhelming class preparation time, including four to six hours in the evening.

"* * * * *

"As with legal parameters, financial constraints (budget cuts) are also everchanging. Employers are constantly required to maintain the operation of their businesses within budgetary parameters. Therefore, we conclude that operating within financial constraints is a condition generally inherent in every work place.

"Due to financial constraints, claimant knew there was the possibility that his music teaching program would be eliminated. Thus, to remain employed as a teacher, claimant became certified to teach social studies, a subject area that was less likely to be eliminated from the curriculum. When the music program was eliminated, claimant chose, rather than being laid off, to accept a position teaching social studies. Claimant subsequently developed a mental condition. Because claimant's change of position was the result of budget cuts, we find that claimant's subsequent mental problems were caused by a condition that is generally inherent in every work place.

"Claimant contends that he lacked training to teach social studies, and that lack of training is not a condition that is generally inherent in every working situation. Because of claimant's eleven years' experience as a teacher,

and his demonstrated proficiency in social studies (sufficient to warrant certification in that subject area), we are not persuaded that, in claimant's case, there was such a lack of training.

"* * * Additionally, although claimant contends, and the Referee found, that the Collective Bargaining Agreement is not generally inherent in every work situation, we conclude that employment contracts, written or otherwise, are certainly inherent in every work situation. Moreover, in this instance, claimant freely chose to exercise his option under the contract, which resulted in 'bumping' another teacher because of claimant's seniority in the school district."

Claimant, in petitioning for review, raises eight assignments of error. Those assignments reduce to two related propositions: (1) The Board improperly focused on factors that did not directly cause his mental disorder—*i.e.*, school budget cuts and claimant's exercise of bumping rights under the collective bargaining agreement. (2) The Board, consequently, did not meaningfully address the actual employment conditions that produced claimant's mental disorder—*i.e.*, "lack of preparation time," which caused him to spend four to six hours every evening preparing for the next day's classes.[3] Thus, claimant asserts, the Board's "generally inherent" conclusion pertains to the "wrong" employment conditions, rendering its application of ORS 656.802(3)(b) erroneous as a matter of law. ORS 183.482(8)(a).

ORS 656.802 provides, in part:

"(3) Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter *unless the worker establishes all of the following*:

"(a) The employment conditions producing the mental disorder exist in a real and objective sense.[4]

"(b) The employment conditions producing the mental disorder are *conditions other than conditions generally*

---

[3] Claimant also asserted that "inadequate training" caused his stress. However, the Board concluded that, because of claimant's certification in social studies, there was no lack of training.

[4] Employer does not dispute that the conditions cited by claimant—*i.e.*, the need to prepare for four distinct classes and the lack of sufficient time for such preparation—exist in a real and objective sense.

*inherent in every working situation* or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"* * * * *

"(d)   There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."[5] (Emphasis supplied.)

Claimant asserts that, in applying ORS 656.802-(3)(b), the Board improperly focused on the conditions that led to his change in position from an elementary music teacher to a secondary social studies teacher and not on his "actual stressors." He contends that the Board's extensive discussion of such factors was an analytic *non sequitur* because

"[w]hether claimant was placed into [the social studies] position because of financial constraints or pursuant to a collective bargaining agreement is of no consequence. What is of consequence is the actual stressors in the social studies position which caused him to decompensate psychologically."

Employer does not dispute—and, indeed, expressly endorses—that proposition. For example, employer acknowledges:

"ORS 656.802(3)(b) speaks to the 'conditions producing the mental disorder.' Clearly the legislature intended the focus to be upon those conditions that are directly responsible for Claimant's mental disorder. Focusing upon events that led to Claimant's initial placement in the work situation can only serve to make this analysis impossible. Thus, the initial question should be: What is it about the job that caused Claimant's mental disorder?

"* * * * *

---

[5] In 1995, the legislature amended ORS 656.802. Or Laws 1995, ch 332, § 56. Those amendments codified principles set forth in pre-1995 decisions by the Board and by this court and do not bear on the disposition of this case. Accordingly, notwithstanding the abstract applicability of those amendments, *Volk v. America West Airlines*, 135 Or App 565, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996), we do not remand for reconsideration on the basis of the changed statutory language. *See Baar v. Fairview Training Center*, 139 Or App 196, 204-05, 911 P2d 1232 (1996).

"Whether Claimant chose to bump another teacher is only relevant to explaining how and what led up to Claimant's assignment as a social studies teacher. It has nothing to do with defining the type of stressors Claimant faced in the job." (Footnote omitted.)

However, employer contends that the Board's consideration of such factors was, at worst, harmless error because the Board adequately and properly addressed claimant's actual stressors from his social studies teaching position, specifically including preparation demands.

■ We agree with both claimant and employer that, in the circumstances presented here, the Board's analysis of the conditions that led to claimant assuming the social studies position was extraneous. Claimant's asserted entitlement to compensation rests, ultimately, on the premise that the major contributing cause of his mental disorder was the stress that claimant experienced once he was in his new position. Thus, on this record, consideration of conditions that antedated claimant's assumption of the social studies position is immaterial.

■ We disagree, however, with employer that the Board's decision should nevertheless be sustained. That is so for two reasons. First, contrary to employer's assumption, the Board's discussion of immaterial conditions of employment may not be discounted as mere "harmless error." From the tone and tenor of its opinion, it is apparent that the Board was preoccupied with the prevalence of layoffs and the dynamics of bumping rights. That emphasis may well have skewed the Board's passing consideration of the preparation demands of the social studies position. *Accord Magana v. Wilbanks International*, 112 Or App 134, 137, 826 P2d 1058 (1992) ("We cannot disregard as surplusage the Board's explicit conclusion that claimant did not prevail *because* he did not prove a fact, that by law, he does not have the burden to prove.") (emphasis in original).

Second, the Board's discussion of the preparation demands associated with the social studies position was so cursory as to preclude meaningful judicial review. The Board

(1) initially identified "the number of different classes [claimant] had to teach coupled with overwhelming class preparation time, including four to six hours in the evening," as being among the pertinent stressors; and (2) ultimately concluded that "the stressors that claimant cites are all conditions which are generally inherent in every working situation." However, nothing in the Board's extended analysis between those statements—a discussion replete with references to budget cuts and collective bargaining agreements—suggests that the Board actually, specifically considered whether the preparation for the social studies position was of a sort "generally inherent in every working situation." Much less does the Board's decision explain why it could, or would, have reached such a conclusion.

■     We thus conclude that the Board failed to "articulate * * * the rational connection between the facts and the legal conclusion" that the preparation associated with claimant's social studies position was of a sort "generally inherent in every working situation." *See Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982). Accordingly, we reverse and remand for the Board to address that question.

Reversed and remanded for reconsideration.